| STATE OF LOUISIANA | * | NO. 2023-K-0074 |
| --- | --- | --- |
| VERSUS | * | |
| | | COURT OF APPEAL |
| SHARONDA S. FREEMAN | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 553-254, SECTION "M1"
Honorable Juana M. Lombard, Commissioner
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge Rosemary Ledet)


Samuel H. Winston
Jeigh L. Britton
Winston Bergeron, LLP
1700 Josephine Street
New Orleans, Louisiana 70113

COUNSEL FOR DEFENDANT/RELATOR, SHARONDA FREEMAN


**WRIT GRANTED; RELIEF DENIED**
**FEBRUARY 7, 2023**

TFL

JCL

RML

This application for supervisory review arises from the conviction and sentence of Sharonda Freeman for one count of simple battery in magistrate court. After sentencing, Ms. Freeman sought review from the Appellate Division of Criminal District Court, wherein two judges affirmed without reasons the judgment of the magistrate court, and one judge dissented without reasons.

Ms. Freeman now seeks review of her conviction and sentence from this Court. After review, we find sufficient evidence was presented to find Ms. Freeman guilty of simple battery and that her sentence was within the vast discretion of the magistrate court. As such, we grant the writ, but deny relief. The request for a stay is also denied.

### *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

On August 16, 2021, Ms. Freeman was a teacher in the Aurora Program at the Harriet Tubman Charter School in New Orleans when a nine-year-old student, swung his backpack and hit Ms. Freeman's face. Instead of following the school protocol, Ms. Freeman pointed in the student's face and grabbed him by the backpack strap.[1] After reviewing the video footage of the incident, the school

---

[1] As described by counsel for Ms. Freeman in the writ application.

1

administrator spoke with Ms. Freeman and terminated her employment.

Ms. Freeman was then charged with a misdemeanor violation of La. R.S. 14:35 Simple Battery. Following a bench trial in magistrate court, Ms. Freeman was convicted and subsequently sentenced to three days imprisonment with 57 days suspended and six months active probation. Ms. Freeman was also required to participate in anger management counseling, complete fifty hours of community service, and submit to six drug tests. Her imprisonment was stayed and the magistrate court was ordered to set post-conviction bail. *See State v. Freeman*, 22-0577 (La. App. 4 Cir. 8/25/22), 348 So. 3d 135, 136.

Ms. Freeman sought review of her conviction and sentence from the Appellate Division of Criminal District Court. A panel of three judges affirmed her conviction and sentence, with two judges voting to affirm and one judge dissenting without reasons. Ms. Freeman now seeks our supervisory review and requests expedited consideration, as she is scheduled to report to serve out her sentence on February 16, 2023.

Ms. Freeman contends there was insufficient evidence to convict her of simple battery and that her sentence was excessive.

### *SIMPLE BATTERY*

Ms. Freeman avers there was insufficient evidence to sustain her conviction. Specifically, Ms. Freeman maintains that she lacked the requisite criminal intent, that she did not use force or violence, and that the "discipline" she imposed was "reasonable and justified" within the student-teacher dynamic.

This Court previously stated:

> When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable

2

to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Rosiere*, 488 So.2d 965 (La.1986); *State v. Heck*, 560 So.2d 611 (La.App. 4th Cir.1990), *writ denied*, 566 So.2d 395 (La.1990). The reviewing court must consider the record as a whole and not just the evidence most favorable to the prosecution; and, if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. *State v. Mussall*, 523 So.2d 1305 (La.1988); *State v. Green*, 588 So.2d 757 (La.App. 4th Cir.1991).

*State v. Hernandez*, 96-0115, p. 3 (La. App. 4 Cir. 12/18/96), 686 So. 2d 92, 94.

"Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." La. R.S. 14:33. Simple battery is defined as "a battery committed without the consent of the victim." La. R.S. 14:35(A). "General criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." *Hernandez*, 96-0115, p. 3, 686 So. 2d at 94-95.

It is undisputed that Ms. Freeman made contact with the student's person. However, Ms. Freeman contends that she lacked the criminal intent, did not use force or violence, or that the force used was justified in the student-teacher relationship.

During the bench trial, Detective Marcia Willis-Watson testified that she investigated the incident between Ms. Freeman and the special needs student. After discovering that the student did not receive "any physical injuries other than just maybe some unwanted touching," Detective Willis-Watson believed the

charge of simple battery was appropriate.

The school administrator/director of the Aurora Program, Carissa Kolakauskas, testified that:

> every student in our program — we are a small program. Last school year we had 22 students. Every student in our program has an individualized education plan that are in special education and receive special education services. This includes counseling, occupational therapy, physical therapy and academic supports.

She stated that the student victim's accommodations were as follows:

> He had small group and individualized academic instruction. He also received speech language pathology services. He had special transportation and a shorten school day.

Ms. Kolakauskas stated that the staff is trained with a focus on verbal de-escalation strategies, but that everyone also learns safe physical restraints for students posing a risk to themselves or others. Ms. Kolakauskas testified that she witnessed the student swing his backpack up in the air, hit Ms. Freeman in the face, and knock her sunglasses off.

She provided surveillance footage of the incident, as she maintains the surveillance cameras and only one other person on her staff can control the cameras. Ms. Kolakauskas testified that she informed Ms. Freeman: "we don't tolerate any sort of physical aggression towards students and that I was going to have to terminate her."

The magistrate court ruled at the conclusion of the bench trial as follows:

> That being said, your next argument about consent might have flown if this was an adult. But first of all, this is a special needs child. Just like a minor can not consent to be raped. They can not consent to having sex. A special needs child that is nine therefore probably not even nine intellectually based on the fact that he is special needs, I don't think he can legally consent to

4

being shoved, pushed or abused. So we are going to strike the second argument that he didn't legally consent or that the State had to prove that the child didn't legally consent because he is minor. He is a very young child with special needs and the State did prove that it was with special needs. In fact, I think the defendant was his special needs teacher. I don't think that the argument of consent or lack thereof is valid in this particular case.

Last but not least, the custodian testified that she is the only one of the only two people that have the log in and access to those videos. So she is the keeper of those video records. She observed the video. The Court observed the video and it is very clear that it was an unwanted touching.

Now, I will say that my mother was a special needs teacher and I know special needs teachers get attacked in the classroom all the time. Unfortunately, that is a risk of the job because of the kids mental state. But the thing is, if she had swung back right and there I might have had a different reaction or a different ruling. But she didn't respond at the time of the attack. She stopped. She gathered her glasses. The child got all the way to the front entrance of the school. Then she attacked him. That means there was a cooling off period. That was an intentional move to go over there and touch that child at that point. That child was out of her custody, out of her control and in the control of another teacher.

Our review of the video 1.2 reveals that the student swung his backpack up in the air when it struck Ms. Freeman in the face, dislodging her sunglasses at around the 44-second mark. Ms. Freeman stops and picks up her glasses, but does not leave her classroom until around the 2:08 minute mark. Video 1.3 depicts Ms. Freeman walking into the school's foyer wherein she walks around looking at her phone from about the five-second mark and exchanges words with someone off camera. At approximately the 1:02 minute mark, Ms. Freeman corners the student in a corner of the foyer, she exchanges words with the student, and appears to push or shove the student's head. Ms. Freeman then points her finger/hand in the student's face and, at about the 1:15 minute mark, grabs the student by the

5

backpack strap, preventing him from fleeing. The student then runs from the school.

The record reflects that a rational trier of fact could have found proof beyond a reasonable doubt each of the essential elements of simple battery were proven. Firstly, the student did not consent to the use of force/violence. Secondly, that Ms. Freeman did use force or violence against the student, as depicted in the video. As such, we find there was sufficient evidence to sustain Ms. Freeman's conviction for simple battery.

## *EXCESSIVE SENTENCE*

Ms. Freeman contends that her sentence, while within the statutory range, is excessive under the circumstances of the case.

This Court outlined the review of a claim of excessive sentencing as follows:

> Article I, § 20 of the Louisiana Constitution explicitly prohibits the imposition of excessive sentences. *State v. Wilson*, 2014-1267, p. 23 (La. App. 4 Cir. 4/29/15), 165 So.3d 1150, 1165. "The excessiveness of a sentence is a question of law, and a reviewing court will not set aside a sentence [for excessiveness] absent a manifest abuse of discretion by the trial [judge]." *State v. Alridge*, 2017-0231, p. 39 (La. App. 4 Cir. 5/23/18), 249 So.3d 260, 288, *writ denied*, 2018-1046 (La. 1/8/19), 259 So.3d 1021. (The U.S. Supreme Court granted certiorari, vacated the judgment, and remanded on *Ramos* grounds).
> Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. *State v. Every*, 2009-0721, p. 7 (La. App. 4 Cir. 3/24/10), 35 So. 3d 410, 417 (quoting *State v. Smith*, 2001-2574, p. 6 (La. 1/14/03), 839 So.2d 1, 4). "However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society." *State v. Cassimere*, 2009-1075, p. 5 (La. App. 4 Cir. 3/17/10), 34 So. 3d 954, 958 (quoting *State v. Landry*, 2003-1671, p. 8 (La. Ap. 4 Cir. 3/31/04), 871 So.2d 1235, 1239). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and

suffering, and is grossly out of proportion to the severity of the crime. *State v. Ambeau*, 2008-1191, p. 9 (La. App. 4 Cir. 2/11/09), 6 So.3d 215, 221 (citing *State v. Bertrand*, 2004-1496, p. 6 (La. App. 4 Cir. 12/15/04), 891 So.2d 752, 757). "A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice." *State v. Vargas-Alcerreca*, 2012-1070, p. 25 (La. App. 4 Cir. 10/2/13), 126 So.3d 569, 583 (quoting *State v. Galindo*, 2006-1090, pp. 15-16 (La. App. 4 Cir. 10/3/07), 968 So.2d 1102, 1113).

A trial court is afforded broad discretion in making sentencing decisions and an appellate court will not set aside an imposed sentence if the record supports the sentence imposed. *State v. Bradley*, 2018-0734, p. 8 (La. App. 4 Cir. 5/15/19), 272 So.3d 94, 99-100 (quoting *State v. Williams*, 2015-0866, pp. 12-13 (La. App. 4 Cir. 1/20/16), 186 So.3d 242, 250). Thus, "[t]he relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate." *State v. Mathieu*, 2018-964, p. 4 (La. App. 3 Cir. 11/6/19), 283 So.3d 1041, 1045 (citing *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957).

In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La. C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. *State v. Wiltz*, 2008-1441, p. 10 (La. App. 4 Cir. 12/16/09), 28 So.3d 554, 561 (quoting *State v. Batiste*, 2006-0875, p. 18 (La. App. 4 Cir. 12/20/06), 947 So.2d 810, 820). However, even where there has not been full compliance with La. C.Cr.P. art. 894.1, resentencing is unnecessary where the record shows an adequate factual basis for the sentence imposed. *State v. Stukes*, 2008-1217, p. 25 (La. App. 4 Cir. 9/9/09), 19 So.3d 1233, 1250 (quoting *Batiste*, 2006-0875, p. 18, 947 So.2d at 820). Further, La. C.Cr.P. art. 881.4(D) expressly states that an "appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed."

*State v. Mitchell*, 21-0488, pp. 5-7 (La. App. 4 Cir. 12/15/21), 334 So. 3d 449, 453-54.

Simple battery is a probatible offense up to six months imprisonment. The

magistrate court sentenced Ms. Freeman to six months with all but three days suspended. She received six months active probation, requiring anger management classes, drug testing, and community service. We recognize this was Ms. Freeman's first offense and that she has begun to comply with the requirements of her sentence, i.e., anger management and community service, but do not find that the magistrate court abused its vast discretion in sentencing Ms. Freeman to serve three days in prison, suspending the remaining time.

## *DECREE*

For the above-mentioned reasons, we find that the record sufficiently supports Ms. Freeman's conviction for simple battery and that her sentence was within the vast discretion afforded. Accordingly, we grant Ms. Freeman's writ, deny the request for a stay, and deny relief. Ms. Freeman's conviction and sentence remain intact.

**WRIT GRANTED; RELIEF DENIED**